UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>         vs.<br><br>KATHY FUNTILA,<br><br>                    Defendant. | CR. NO. 17-00515 LEK<br>CV. NO. 21-00325 LEK |

**ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE,
SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN
FEDERAL CUSTODY AND DENYING A CERTIFICATE OF APPEALABILITY**

On July 26, 2021, pro se Defendant/Petitioner Kathy
Funtila, also known as Kathy Retter ("Funtila"), filed her
Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct
Sentence by a Person in Federal Custody ("§ 2255 Motion").
[Dkt. no. 119.]  On August 18, 2021, an Order to Show Cause was
issued, directing Plaintiff/Respondent United States of America
("the Government") to file an answer, pursuant to Rule 5 of the
Rules Governing Section 2255 Proceedings for the United States
District Courts.  [Dkt. no. 120.]  The Government filed its
response to the § 2255 Motion ("Answer") on September 17, 2021,
and Funtila filed her reply in support of the § 2255 Motion
("Reply"), on November 5, 2021.  [Dkt. nos. 124, 125.]
Funtila's § 2255 Motion is hereby denied, and a certificate of
appealability is also denied, for the reasons set forth below.

## BACKGROUND

On September 13, 2017, Funtila was indicted for five counts of bank fraud, in violation of 18 U.S.C. § 1344. [Indictment, filed 9/17/17 (dkt. no. 1).]  At her initial appearance on September 14, 2017, Funtila pled not guilty to all counts.  [Minutes, filed 9/14/17 (dkt. no. 8), at PageID #: 22.] Funtila's bail was set at $50,000, and Funtila posted an unsecured bond.  [Minutes, filed 9/18/17 (dkt. no. 11), at PageID #: 26; Appearance Bond, filed 9/20/17 (dkt. no. 15).] After Funtila violated the terms of her pretrial release, she was allowed to remain on bail, but she was required to post a $100,000 secured bond.  See Minutes, filed 12/15/17 (dkt. no. 23), at PageID #: 50; Appearance Bond, filed 12/21/17 (dkt. no. 28).

Funtila was later indicted for: five counts of bank fraud ("Counts 1-5"); five counts of wire fraud, in violation of 18 U.S.C. § 1343 ("Counts 6-10"); one count of access device fraud, in violation of 18 U.S.C. § 1029(a)(2) ("Count 11"); one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) ("Count 12"); and three counts of embezzlement in connection with health care, in violation of 18 U.S.C. § 669 ("Counts 13-15").  [Superseding Indictment, filed 1/31/18 (dkt. no. 39).]  At her arraignment on February 12, 2018, Funtila pled

not guilty to all counts.  [Minutes, filed 2/12/18 (dkt. no. 44).]

On August 16, 2018, Funtila withdrew her not guilty plea as to Counts 1 and 12 and entered guilty pleas, pursuant to a plea agreement.  [Minutes, filed 8/16/18 (dkt. no. 59); Memorandum of Plea Agreement, filed 8/16/18 (dkt. no. 60).]  The Draft Presentence Investigation Report ("Draft PSR") was filed on November 27, 2018, and Funtila filed her Sentencing Statement, which included objections to the Draft PSR, on November 30, 2018.  [Dkt. nos. 68, 69 (both filed under seal).]  The final version of the Presentence Investigation Report ("Final PSR") was filed on January 8, 2019.  [Dkt. no. 75 (filed under seal).]  The Final PSR included an addendum that responded to the objections to the Draft PSR.  [Id. at 41-44.]

On December 11, 2018, the Government filed a motion to revoke Funtila's bail ("Revocation Motion").  [Dkt. no. 70 (filed under seal).]  On December 27, 2018, this Court granted the Revocation Motion and ordered Funtila to self-surrender to the United States Marshal's Office that day.  [Minutes, filed 12/27/18 (dkt. no. 73).]  On January 23, 2019, the Government filed a motion asking this Court to apply Funtila's bail money to any restitution award ("Restitution Motion").  [Dkt. no. 77.]

At sentencing, this Court accepted the plea agreement and adopted the factual findings in the Final PSR.  [Minutes,

filed 1/24/19 (dkt. no. 79), at PageID #: 363-64.]  Funtila was
sentenced to, *inter alia*: ninety-five months of imprisonment as
to Count 1 and twenty-four months as to Count 12, to run
consecutively; five years of supervised release as to Count 1
and one year as to Count 12, to run consecutively; and
$115,362.25 in restitution.  [Id. at PageID #: 364.]  This Court
granted the Government's Restitution Motion and granted the
Government's oral motion to dismiss Counts 2 through 11 and
Counts 13 through 15.  [Id. at PageID #: 366-67.]

        The Judgment in a Criminal Case ("Judgment") was filed
on January 25, 2019, and Funtila filed her Notice of Appeal on
February 6, 2019.  [Dkt. nos. 82, 84.]  The Ninth Circuit
affirmed the Judgment in a July 20, 2020 memorandum disposition,
and issued its Mandate on August 11, 2020.  [Dkt. nos. 106,[1]
107.]

        In the § 2255 Motion, which was timely filed, Funtila
asserts several instances of ineffective assistance of counsel:
telling Funtila the Draft PSR "was 'merely a worksheet'" and
failing to file objections to the Draft PSR ("Ground One");
[§ 2255 Motion at 5;] failing to provide Funtila with adequate
information about the Government's case and depriving her of the
opportunity to make an informed decision about whether and when

---

    [1] The memorandum disposition is also available at 812 F.
App'x 655.

to change her plea to guilty ("Ground Two"); failing to present
mitigation evidence at sentencing ("Ground Three"); and allowing
hearsay evidence to be admitted at sentencing and failing to
advise Funtila properly about a financial form, resulting in
both the revocation of the bond and the imposition of a higher
sentence (collectively "Ground Four").

### STANDARD

Section 2255(a) states:

> A prisoner in custody under sentence of a court
> established by Act of Congress claiming the right
> to be released upon the ground that the sentence
> was imposed in violation of the Constitution or
> laws of the United States, or that the court was
> without jurisdiction to impose such sentence, or
> that the sentence was in excess of the maximum
> authorized by law, or is otherwise subject to
> collateral attack, may move the court which
> imposed the sentence to vacate, set aside or
> correct the sentence.

This Court has described the standards applicable to § 2255
motions as follows:

> A court may dismiss a § 2255 motion if "it
> plainly appears from the motion, any attached
> exhibits, and the record of prior proceedings
> that the moving party is not entitled to relief."
> R. 4(b), Rules Governing Section 2255
> Proceedings.  A court need not hold an
> evidentiary hearing if the allegations are
> "palpably incredible [or] patently frivolous,"
> Blackledge v. Allison, 431 U.S. 63, 76 (1977)
> (internal quotation marks and citation omitted),
> or if the issues can be conclusively decided on
> the basis of the evidence in the record.  See
> United States v. Mejia-Mesa, 153 F.3d 925, 929
> (9th Cir. 1998) (noting that a "district court
> has discretion to deny an evidentiary hearing on

> a § 2255 claim where the files and records
> conclusively show that the movant is not entitled
> to relief"). Conclusory statements in a § 2255
> motion are insufficient to require a hearing.
> United States v. Johnson, 988 F.2d 941, 945 (9th
> Cir. 1993). A petitioner must "allege specific
> facts which, if true, would entitle him to
> relief." United States v. Rodrigues, 347 F.3d
> 818, 824 (9th Cir. 2003) (internal quotation
> marks and citation omitted).

Malivao v. United States, CR 13-00885 LEK, 2018 WL 6834704, at

*2 (D. Hawai`i Dec. 28, 2018) (alteration in Malivao) (some

citations omitted).

The issues raised in Funtila's § 2255 Motion are legal

issues that "can be conclusively decided on the basis of the

evidence in the record," including the record of the underlying

proceedings. See Mejia-Mesa, 153 F.3d at 929. Because there

are no factual disputes that must be resolved in order to rule

on the legal issues presented in the § 2255 Motion, an

evidentiary hearing is unnecessary in this case.

## **DISCUSSION**

## I.   **Ineffective Assistance of Counsel**

All of the grounds in Funtila's § 2255 Motion allege

she received constitutionally ineffective assistance of counsel.

This district court has stated:

> To prevail on an ineffective assistance of
> counsel claim, a petitioner must establish two
> distinct elements. First, he must show that
> counsel's representation fell below an objective
> standard of reasonableness. Strickland v.
> Washington, 466 U.S. 668, 688 (1984). Second, he

must show that "there is a reasonable probability
that, but for counsel's unprofessional errors,
the result of the proceeding would have been
different."  Id. at 694.  In other words, a
petitioner must show both that counsel's
performance was deficient and that the deficiency
was prejudicial.  Id. at 692.

Counsel "is strongly presumed to have
rendered adequate assistance and made all
significant decisions in the exercise of
reasonable professional judgment."  Id. at 690.
"[S]trategic choices made after thorough
investigation of law and facts relevant to
plausible options are virtually unchallengeable;
and strategic choices made after less than
complete investigation are reasonable precisely
to the extent that reasonable professional
judgments support the limitations on
investigation.  In other words, counsel has a
duty to make reasonable investigations or to make
a reasonable decision that makes particular
investigations unnecessary."  Id. at 690-691.

Conclusory allegations of ineffective
assistance of counsel made with no factual or
legal explanation fall well short of stating a
cognizable claim for ineffective assistance of
counsel.  See Blackledge v. Allison, 431 U.S. 63,
74 (1977) ("[P]resentation of conclusory
allegations unsupported by specifics is subject
to summary dismissal.").

Foster v. United States, CR. NO. 13-00219 DKW, 2019 WL 2428561,

at *4 (D. Hawai`i June 10, 2019) (alterations in Foster).  As to

the reasonableness of representation prong, a court must

"determine whether, in light of all the circumstances, the

identified acts or omissions were outside the wide range of

professionally competent assistance."  Strickland, 466 U.S. at

690.  Funtila bears the burden of proof as to both prongs of the

Strickland analysis.  See Turk v. White, 116 F.3d 1264, 1265
(9th Cir. 1997).

Funtila was represented by various counsel in the
underlying proceedings.  During the proceedings relevant to the
§ 2255 Motion, she was represented by Louis Michael Ching, Esq.
See CJA 20 Appointment of and Authority to Pay Court-Appointed
Counsel, filed 5/11/18 (dkt. no. 52); Minutes, filed 1/24/19
(dkt. no. 79), at PageID #: 367 (noting this Court granted
Mr. Ching's motion to withdraw and for substitution of appellate
counsel).

> ### A.   **Change of Plea**

Funtila states:

> Counsel met petitioner on three occasions at a
> public diner and did not review discovery to give
> petitioner the information needed to decide if
> the evidence was sufficient to prove beyond a
> reasonable doubt petitioner was guilty instead
> threatening her to plea or serve 30 years very
> abusive toward petitioner.

[§ 2255 Motion at 5.]  Funtila also argues Mr. Ching failed to
investigate her mental health issues before advising her to
plead guilty, failed to advocate for her aggressively in the
plea negotiations, did not answer her questions, and failed to
properly advise her about the possible sentence she would
receive.  [Reply at 7-8.]

Funtila's argument that Mr. Ching did not advocate
aggressively on her behalf during plea negotiations is based on

8

her belief that he should have pursued a plea agreement sooner. See Reply at 8 ("An experienced and competent defense counsel would have recognized that almost if in fact the Petitioner is guilty of the conduct alleged by the government, . . . the Petitioner is always best served by **immediately** seeking a plea agreement . . . ." (emphasis in original)).  As previously noted, Mr. Ching's appointment form was filed on May 11, 2018, and Funtila's change of plea hearing was held on August 16, 2018.  Funtila indicates that there was an earlier plea agreement proposed by the Government, but she rejected it.  See Reply at 9 ("Petitioner was severely prejudiced and induced to initially reject a guilty plea without having all of the alternatives sufficiently explained.").  However, Funtila has not established that the earlier proposal was made during Mr. Ching's representation, and Funtila has not identified any way that she was prejudiced by the rejection of the earlier proposal.  As to Funtila's argument that Mr. Ching rendered constitutionally ineffective assistance by failing to investigate her mental health issues before the plea agreement, Funtila does not identify any evidence about her mental health that would have resulted in more favorable terms in her plea agreement.  Thus, because Funtila cannot establish prejudice, the portions of Ground Two based on those alleged deficiencies fail.

Mr. Ching agrees that he met with Funtila three times in-person and that the meetings occurred at the cafeteria of the federal building.  However, he states the meetings occurred in a private area where they could not be overheard.  [Answer, Exh. A (Decl. Louis Michael Ching, Esq. ("Ching Decl.")) at ¶ 4.] Mr. Ching also states he spoke with Funtila on the telephone "many times" prior to the change of plea hearing.  [Id.] According to Mr. Ching, he reviewed the discovery with Funtila that one of her prior defense counsel had printed out.  He advised Funtila that the Government had a strong case against her, and he left a binder of discovery materials with her to review so that she would understand the strength of the Government's case.  Mr. Ching denies threatening Funtila.  [Id.]

At the change of plea hearing, Funtila acknowledged that: she received a copy of the current indictment; she had an opportunity to discuss with Mr. Ching the charges and the factual basis for the charges; she had the opportunity to read through the plea agreement and discuss it with Mr. Ching; she fully understood the plea agreement's terms; and her signature was on the plea agreement.  [Trans. of Proceedings - 8/16/18 Motion for Withdrawal of Not Guilty Plea and to Plead Anew ("Guilty Plea Trans."), filed 3/25/19 (dkt. no. 97), at 4-5.] After the Government's attorney summarized the essential terms of the plea agreement, Funtila again confirmed that she

10

understood the charges, and she confirmed that the Government's summary was consistent with her understanding of the agreement. [Id. at 8.]  Funtila also confirmed that: she and Mr. Ching discussed the United States Sentencing Guidelines ("Guidelines") and how they may apply in her case; she understood a presentence report had to be prepared before this Court could determine her sentencing range under the Guidelines; and she understood that the sentence this Court ultimately imposed may be different than any estimated sentence she may have discussed with Mr. Ching. [Id. at 11-12.]

This Court summarized the trial-related rights Funtila would give up by pleading guilty, including the right to a jury trial, the right to be presumed innocent, and the Government's requirement to prove guilt beyond a reasonable doubt.  Funtila confirmed that she understood these rights, and she understood that she was giving up those rights by pleading guilty.  [Id. at 13-14.]  The Government's attorney also summarized the essential elements of Counts 1 and 12 that it would have been required to prove if the case proceeded to trial.  Funtila confirmed that she understood that, if there had been a trial, the Government would have been required to prove each element beyond a reasonable doubt.  [Id. at 15-16.]  Funtila stated the facts summarized in the plea agreement, which she reviewed with Mr. Ching, were all true.  [Id. at 20.]  Prior to that exchange

with this Court, Mr. Ching said he reviewed an advance copy of the plea agreement with Funtila and he "asked her for any questions she may have and she gave [him] questions and [he] answered them." [Id.]  Funtila did not contradict Mr. Ching's representation that he answered her questions about the plea agreement.

Funtila said no one threatened her or tried to pressure her into pleading guilty, and she also stated she was satisfied with Mr. Ching's representation in the case.  [Id. at 4-6.]  Even without considering whether Funtila's statements in the § 2255 Motion and her Reply are more credible than the statements in the Ching Declaration,[2] Funtila's own statements in the change of plea hearing show that she knowingly and voluntarily entered her guilty plea, and that she did so with a full understanding of what the Government would have been required to prove if she proceeded to trial and with a full understanding of the sentencing process which was to follow.  Because Mr. Ching did not render ineffective assistance in connection with Funtila's plea negotiations and guilty plea, the § 2255 Motion is denied as to Ground Two.

_____

[2] "An evidentiary hearing is required when credibility determinations are necessary to weigh conflicting declarations in a § 2255 proceeding."  United States v. Cristie, CR. NO. 10-00384(01) LEK, 2018 WL 2224239, at *5 (D. Hawai`i May 15, 2018) (some citations omitted) (citing United States v. Chacon-Palomares, 208 F.3d 1157, 1159 (9th Cir. 2000)).

**B.** **Objections to the PSR**

Funtila claims that Mr. Ching did not raise sufficient objections to the Draft PSR and that, because he told her the Draft PSR was "'merely a worksheet,'" he did not give her the opportunity to identify objections that she wanted to raise. [§ 2255 Motion at 5.]  Funtila also claims that Mr. Ching refused to review the Draft PSR with her, and that he had her sign a form stating she reviewed and accepted the contents of the Draft PSR, even though she had not reviewed the Draft PSR. [Reply at 9.]

Mr. Ching denies referring to the Draft PSR as a worksheet.  He states he followed his usual practice in this case: he provided Funtila with the Draft PSR; discussed it with her; and worked with her to formulate objections.  [Ching Decl. at ¶ 3.]  Mr. Ching, on Funtila's behalf, filed a Sentencing Statement, which asserted eleven specific "objections and/or corrections" to the Draft PSR.  [Dkt. no. 69 (filed under seal) at 2.]  The objections addressed issues regarding, *inter alia*, relevant conduct and the application of adjustments to Funtila's offense level.  See id. at 2-3.

During the sentencing hearing, this Court asked Funtila, "have you and your attorney had a full, fair opportunity to read, review, and discuss the Presentence Investigation Report and any addendum, and to file any factual

13

or legal objections to that report?"  [Trans. of Proceedings - 1/24/19 Sentencing ("Sentencing Trans."), filed 3/7/19 (dkt. no. 88), at 4.]  Funtila responded "[y]es," and, when asked if he agreed with that statement, Mr. Ching responded, "[y]es, I do."  [Id.]  This Court noted that Mr. Ching filed objections to the Draft PSR and asked him if there were any objections remaining after the addendum in the Final PSR addressing the parties' objections.  Mr. Ching noted that Funtila was likely to appeal, and he therefore objected to the entire Final PSR to preserve Funtila's ability to appeal.  In addition, Mr. Ching identified a number of specific paragraphs of the Final PSR that the defense was objecting to, and he reiterated some of the objections made in the Sentencing Statement.  [Id. at 5-6.]  This Court denied the specific objections and adopted the Final PSR, including the addendum, without making any changes to the factual findings.  [Id. at 7.]

       The record does not support Funtila's claims that Mr. Ching failed to object to either version of the PSR.  To the extent that the § 2255 Motion can be liberally construed as asserting Mr. Ching rendered ineffective assistance by failing to raise other objections to the PSR,[3] that argument also fails.

---

[3] Because Funtila is proceeding pro se, her § 2255 Motion and Reply must be liberally construed.  See United States v. Seesing, 234 F.3d 456, 462 (9th Cir. 2000) ("Pro se complaints
                                        (. . . continued)

First, Funtila has not identified what specific objection Mr. Ching failed to include among the objections he made. Moreover, even without considering whether Funtila's statements in the § 2255 Motion and her Reply are more credible than the statements in the Ching Declaration, Funtila's own statements in the sentencing hearing show that she had the opportunity to review and discuss the Draft PSR with Mr. Ching and to file any objections she wanted to raise.  Thus, Mr. Ching did not render ineffective assistance in connection with Funtila's PSR.  The § 2255 Motion is therefore denied as to Ground One.

C. **Failure to Present Mitigation Evidence**

Funtila next argues Mr. Ching rendered ineffective assistance because he failed to present evidence of mitigating circumstances "such as Hawaii National Bank was indicted for fraud or positive attributes of [hers or] other evidence of mitigation."  [§ 2255 Motion at 5.]  Funtila argues Mr. Ching failed to present evidence regarding her mental health issues. For example, he could have called her psychologist to testify at the sentencing hearing.  [Reply at 10-11.]

First, this Court notes that Hawaii National Bank has not been indicted in this district court.  Further, this Court is not aware of any other court in which Hawaii National Bank

---

and motions from prisoners are to be liberally construed." (citations omitted)).

was indicted for fraud.  Funtila's argument about Mr. Ching's failure to present evidence regarding Hawaii National Bank's indictment is therefore rejected.  This Court's analysis of Ground Three will only address the alleged failure to present mitigation evidence regarding Funtila's mental health and regarding her positive attributes.

Mr. Ching states that, in presenting the defense's mitigation argument during sentencing, he "chose to focus on Ms. Funtila's depression, the fact that SMAC actually used a good deal of the money from the lines of credit to operate its business,[4] and the fact that statistics show that the average white-collar offender receives a sentence of 29 months in prison."  [Ching Decl. at ¶ 5.]  Mr. Ching also chose not to reiterate Funtila's positive attributes that this Court and the Government had already discussed during the sentencing hearing. [Id.]

In summarizing the mitigating factors relevant to Funtila's sentence, this Court noted that Funtila and her family had been refugees from Laos, and she experienced significant hardship in a refugee camp.  Funtila also experienced personal

---

[4] Mr. Ching agreed with this Court that SMAC Hawaii ("SMAC") was the biggest victim in this case.  [Sentencing Trans. at 26.] Funtila worked as a bookkeeper and accounting manager.  Count 1 involved scheme to defraud Hawaii National Bank by making unauthorized withdrawals from SMAC's lines of credit for Funtila's personal use.  [Plea Agreement at pgs. 5-6.]

16

hardships as an adult, including the death of her first husband within a year after their marriage and fertility issues during her second marriage. [Sentencing Trans. at 10.] This Court noted Funtila was "compliant with mental health treatment." [Id. at 11.] As to Funtila's positive attributes, this Court noted Funtila had a high school diploma, no history of violence, no history of substance abuse, and strong support from her family. [Id. at 10.] The Government also acknowledged that Funtila is "very smart." [Id. at 17.]

When Mr. Ching argued the defense's position on sentencing, he stated the fertility issues that Funtila experienced during her second marriage caused her to fall into a depression, which led to "a major depressive anxiety disorder that was being treated by a doctor . . . ." [Id. at 21.] Mr. Ching stated part of the way Funtila dealt with her depression was to spend money on gifts to give away, and he therefore argued treatment for the depression during supervised release and monitoring would be effective to address the conduct at issue in this case, and incarceration was not necessary. [Id. at 21-22.] Mr. Ching also argued the term of incarceration this Court stated it was inclined to impose far exceeded the average sentence imposed on persons convicted of a white-collar crime. [Id. at 22-23.]

Thus, at the time of the sentencing hearing, this Court was aware of issues related to Funtila's mental health, as well as Funtila's positive personal attributes.  Funtila does not identify what additional facts about her mental health issues and what additional positive attributes Mr. Ching could have presented during the sentencing hearing, nor has she established how that additional information would have resulted in a more favorable sentence.  Funtila has not identified any evidence to contradict Mr. Ching's statements that he made strategic decisions about what to focus upon during the sentencing hearing.  Based on its review of the record and its knowledge of the proceedings, this Court finds that Mr. Ching made "strategic choices . . . after thorough investigation of law and facts relevant to" the mitigating factors, and his choices "are virtually unchallengeable."  See Strickland, 466 U.S. at 690.  Funtila has failed to establish that Mr. Ching rendered constitutionally ineffective assistance in his presentation of mitigation arguments at sentencing.  The § 2255 Motion is therefore denied as to Ground Three.

D.   **Ground Four**

In Ground Four, Funtila argues hearsay evidence considered at sentencing, which was admitted during sentencing without objection by Mr. Ching, was prejudicial because it "potentially caused a higher sentence."  [§ 2255 Motion at 6.]

18

She also argues he "did not explain finacials [sic] correctly which ultimately led to Bond revocation."  [Id.]

### 1.  **Hearsay**

Rule 801(c) of the Federal Rules of Evidence defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."

> Hearsay is generally admissible in sentencing hearings, as neither the Confrontation Clause nor the Federal Rules of Evidence apply to such hearings.  United States v. Petty, 982 F.2d 1365, 1367–69 (9th Cir.), *as amended by* 992 F.2d 1015 (9th Cir. 1993); Fed. R. Evid. 1101(d)(3). Nevertheless, "[d]ue process requires that some minimal indicia of reliability accompany a hearsay statement" introduced at sentencing. Petty, 982 F.2d at 1369. . . .  The defendant typically has the burden to show that disputed hearsay is false or unreliable.  United States v. Kimball, 975 F.2d 563, 567 (9th Cir. 1992).

United States v. Franklin, 18 F.4th 1105, 1114 (9th Cir. 2021) (some alterations in Franklin).

Multiple out-of-court statements that were offered as proof of the matter asserted were summarized in the Final PSR. The statements addressed matters including offense conduct, victim impact, Funtila's background, and her criminal history. This Court adopted the factual findings in the Final PSR and relied upon those findings in determining Funtila's sentence. See Sentencing Trans. at 7.

The lack of a hearsay objection to the out-of-court statements did not constitute ineffective assistance because the rule against hearsay, Fed. R. Evid. 802, does not apply in sentencing proceedings.  Mr. Ching confirms that he did not make a hearsay objection because he was aware of the controlling case law allowing the consideration of hearsay statements during sentencing.  [Ching Decl. at ¶ 6.]  "[C]ounsel has no duty to make meritless objections."  United States v. Farrar, CRIM. NO. 14-00707 SOM, 2021 WL 6125830, at *6 (D. Hawai`i Dec. 28, 2021) (citing Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994)).

Ground Four is also liberally construed as asserting that Mr. Ching rendered ineffective assistance by failing to raise a due process objection to the out-of-court statements relied upon in sentencing.  However, Funtila does not identify any specific out-of-court statement that was false or lacking sufficient indicia of reliability.  Funtila has therefore failed to establish that Mr. Ching rendered ineffective assistance by failing to make a due process objection to out-of-court statements considered at sentencing.  This portion of Ground Four is denied.

### 2.  **Net Worth Statement**

As part of the presentence report preparation process, Funtila was required to submit a Net Worth Statement form and a Monthly Cash Flow Statement form to the United States Probation

Office.  Funtila argues Mr. Ching rendered constitutionally ineffective assistance because he failed to advise her adequately regarding the completion of the forms.  [§ 2255 Motion at 6.]

In the Revocation Motion, the Government argued Funtila omitted information from: the list of all transfers of over $1,000 that she made since her arrest; the list, as to the time since her arrest, of all bank accounts, all cash on hand, and any assets held on someone else's behalf; and the list of any real estate she owned or had transferred.  See Trans. of Proceedings - 12/27/18 Hrg. on the Government's Sealed motion [70] to Revoke Bail ("Revocation Hrg. Trans."), filed 12/24/19 (dkt. no. 100), at 3.  Mr. Ching argued Funtila's omission of the information was unintentional.  According to Mr. Ching, Funtila did not realize she had to include information from the date of arrest because she did not read the form carefully.  He also argued Funtila did not intentionally conceal the information, as evidenced by the fact that she had previously disclosed that type of information to the United States Pretrial Services Office.  See id. at 6, 12-13.  This Court ultimately found that Funtila withheld information on the Net Worth Statement form that she knew she was supposed to provide.  This Court therefore found Funtila violated the terms of her supervised release and revoked her release.  [Id. at 22-23.]  In

21

addition, at sentencing, the withholding of information that should have been provided on the Net Worth Statement contributed to a two-level increase for obstruction of justice and resulted in the removal of the three-level reduction for acceptance of responsibility.  See Sentencing Trans. at 7.  The higher total offense level resulted in a higher Guidelines sentencing range. Thus, Funtila was prejudiced as a result of the omission of information from the Net Worth Statement form.

Although Funtila attributes her failure to properly complete the form to Mr. Ching's failure to adequately advise her about the form, she does not specify whether he, for example, failed to answer her questions about the form or provided her with erroneous advice about the form.  Mr. Ching states: "My recollection is that I provided her with the worksheet and informed her to review it carefully, fill it out accurately, and contact me if she had any questions."  [Ching Decl. at ¶ 7.]  At the hearing on the Revocation Motion, Mr. Ching indicated that this was consistent with his usual practice.  [Revocation Hrg. Trans. at 7.]  Funtila had Mr. Ching's cellular telephone number, and the two spoke on the telephone about various aspects of the case, but Mr. Ching does not recall her asking him any questions about the Net Worth Statement.  [Ching Decl. at ¶ 7.]

At the hearing on the Revocation Motion, Mr. Ching stated, "in the future I'll never do these affidavits again"[5] and, instead, he was

> going to ask the Probation to go ahead and counsel [the defendant] right there at the interview, no matter how long it takes, and swear her in and basically so we can go over every little thing, and they will mention to her that it's from the date of arrest and it will be real clear.

[Revocation Hrg. Trans. at 8.]  Mr. Ching represented that Funtila would have included the omitted information if she had been told, while she was completing the forms: "Have you read this carefully?  Do you know it has to be from the time of arrest?"  [Id. at 6.]  However, the mere fact that Mr. Ching indicated a different practice for the completion of the financial forms would have been more effective is insufficient to establish that he rendered constitutionally ineffective assistance.

"The proper measure of attorney performance [is] simply reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688.  In other words, the test is not whether the attorney followed best practices in his

---

[5] Funtila signed a "Declaration of Defendant or Offender Net Worth & Cash Flow Statements" that was signed under penalty of perjury and acknowledged that making false statements could result in the revocation of supervision and possible prosecution under 18 U.S.C. § 1001.  [Revocation Motion, Exh. A at PageID #: 231.]

representation of the defendant.  Funtila has not established
that any instruction Mr. Ching gave her about the completion of
the financial forms was unreasonable, based on the prevailing
professional norms.  As noted by the Government's attorney at
the hearing on the Revocation Motion, "the form that [Funtila]
had to fill out is very clear and straightforward."  [Revocation
Hrg. Trans. at 3.]  This Court also noted Funtila had a high
school education and "an extensive background involving
financial matters and transactions."  [Id. at 7.]  Further, this
Court noted that the first sentence of the instructions for the
Net Worth Statement

> says, "Having been convicted in the United States
> District Court, you are required to prepare and
> file with the probation officer an affidavit
> fully describing your financial resources,
> including a complete listing of all assets you
> own or control as of this date" -- okay, so I get
> that; she only put down -- "and any assets you
> have transferred or sold since your arrest."
> It's the first sentence and it's very plainly
> stated.

Id. at 10; see also Revocation Motion, Exh. A at PageID #: 221.
Under the circumstances of this case, this Court cannot find
that Mr. Ching's representation during Funtila's completion of
the financial forms "fell below an objective standard of
reasonableness," based on "prevailing professional norms."  See
Strickland, 466 U.S. at 688.  This portion of Ground Four is
therefore denied.

**E.   <u>Summary</u>**

This Court has rejected all of Funtila's ineffective assistance of counsel claims.  Because Funtila has not established any basis for § 2255 relief, her § 2255 Motion is denied in its entirety.

## II.   <u>Certificate of Appealability</u>

This district court has stated that:

> In dismissing a § 2255 motion, the court must also address whether [defendant/petitioner] should be granted a certificate of appealability ("COA").  <u>See</u> R. 11(a), Rules Governing Section 2255 Proceedings (providing that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant").  A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

> "The standard for a certificate of appealability is lenient."  <u>Hayward v. Marshall</u>, 603 F.3d 546, 553 (9th Cir. 2010) (en banc), <em>overruled on other grounds by</em> <u>Swarthout v. Cooke</u>, 562 U.S. 216 (2011).  The petitioner is required to demonstrate only "that reasonable jurists could debate the district court's resolution or that the issues are adequate to deserve encouragement to proceed further."  <u>Id.</u> (citation and internal quotation marks omitted).  The standard "requires something more than the absence of frivolity, but something less than a merits determination."  <u>Id.</u> (internal quotation marks omitted).

> The court carefully reviewed [the defendant/petitioner's] assertions and gave him every benefit by liberally construing them.  Based on the above analysis the court finds that reasonable jurists could not find the court's rulings debatable.

_Malivao_, 2018 WL 6834704, at *7 (some alterations in _Malivao_)
(some citations omitted).  Reasonable jurists would not find
that the rulings in this Order regarding Funtila's § 2255 Motion
are debatable.  A certificate of appealability therefore will
not be issued.

**CONCLUSION**

For the foregoing reasons, Funtila's Motion Under 28
U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a
Person in Federal Custody, filed July 26, 2021, is HEREBY
DENIED.  In addition, this Court DENIES a certificate of
appealability.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 23, 2022.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**UNITED STATES OF AMERICA VS. KATHY FUNTILA; CR 17-00515 LEK; CV
21-00325 LEK; ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 TO
VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL
CUSTODY AND DENYING A CERTIFICATE OF APPEALABILITY**